UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

INFO-HOLD, INC.,                  Case No. 1:08-cv-802

     Plaintiff,                      Judge Timothy S. Black

vs.

APPLIED MEDIA TECHNOLOGIES
CORPORATION,

     Defendant.

### ORDER ON CLAIM CONSTRUCTION

The parties have each submitted briefs in support of their proposed claim constructions. (Docs. 47, 48, and 50). Additionally, the Court held a *Markman* hearing on April 17, 2013.

**I. THE PATENT AT ISSUE**

The '374 patent, titled "Programmable Messaging System for Controlling Playback of Messages on Remote Music-On-Hold-Compatible Telephone Systems and Other Message Output Devices," is generally directed to a system and methods for the remote control of on hold, overhead, and other message playback devices located at one or more remote locations. As described by this Court in its Order on Claim Construction in the related case, *Info-Hold, Inc. v. Muzak Holdings, et al.*, Case No. 1:11-cv-283:

> "The claimed invention can be <u>generally summarized</u> as achieving the desired control over messaging by using a computer that is programmed to push control signals to linked remote playback devices. These remote playback devices have a memory on which the various message options have been previously stored, and the ability to manage message playback according to the incoming control signal, and an output through which the chosen message is played. The control signals originating from the computer and pushed out to the remote playback devices contain instructions that include the intended device and the desired message. The designated playback device then plays the desired message."

Doc. 60 at PAGEID #1122 (emphasis supplied).

## II.  STANDARD OF REVIEW

Claim construction is a matter of law to be decided exclusively by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370.

"The appropriate starting point [...] is always with the language of the asserted claim itself." *Comark Comm, Inv. v. Harris Corp.*, 156 F.3d 1186 (Fed. Cir. 1998). "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).

Claim terms are "generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention …." *Id*. at 1313.

In the event of ambiguity regarding claim terms, courts must first look to the intrinsic evidence (*i.e.*, the claim itself, the specifications, the prosecution history, and the prior art cited in the patent) to resolve the ambiguities.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

"The specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  *Id.*  "When the specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term."  *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998).

In most circumstances, analysis of the intrinsic evidence alone will resolve claim construction disputes.  *See Vitronics*, 90 F.3d at 1583.  However, if the intrinsic evidence does not resolve ambiguities, extrinsic evidence may be considered.  Extrinsic evidence "can shed light on the relevant art, but is less significant than the intrinsic record in determining the 'legally operative meaning of disputed claim language.'"  *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004).

### III. CONSTRUCTION OF THE CLAIMS

#### A. Overview

Here, the nub of the dispute is whether the patented invention discloses a system where a signal is sent from a computer to a remote playback device to provide playback material or whether the invention disclosed is sufficiently broad to include a system where the playback device initiates contact with the server and requests playback material which is then provided to the playback device.

The first sentence of the Abstract of the Patent discloses "[a] remotely programmable message delivery **system** comprises a number **of** client **computers which communicate with a server to send control signals to one or more remote message playback devices**." (emphasis supplied). Doc. 74-1, the '374 Patent, at PAGE ID # 396.

Consistent with such disclosure, **the claims language** identifies "**a computer** … **operable to generate and transmit control signals** … **for controlling** … **message playback devices** … [and **the] message playback devices being adapted to receive said control signals via said communication link** …." (emphasis supplied) *Id*. at Col. 20, lines 23-27 and 28-30, PAGE ID # 436.

Thus, according to the very first statement in the specifications of the patent, "the invention relates to **a system for** generating and **transmitting** message playlists **to remotely located** optical disc **players** for playing selected messages via a music on-hold-compatible telephone system or public address system." (emphasis supplied). *Id*. at Col.

4

1, lines 9-13, PAGE ID # 424.

Under Summary of the Invention, the specifications state that "**the computer** is programmable to **generate control signals and provide them** … for transmission **to** the **remote sites** …." (emphasis supplied). *Id*. at Col. 2, lines 41-43, PAGE ID # 424.

The concluding paragraph of the Summary of the Invention explains that the message payback devices are adapted to receive the signals which the server sends:

> "… **the message playback devices each comprise a compact disc player and a receiver circuit** *for receiving* **radiopaging signals** transmitted by via a radiopaging company. **The receiver circuit recognizes radiopaging signals directed to it** and commands the compact player to play the message tracks specified in the radiopaging signals at the time and in the sequence requested by the client computer from which the message playlist data for the radio paging signals originated." (emphasis supplied). *Id*. at Col. 2, lines 55-63, PAGE ID # 424.

Furthermore, every single embodiment of the inventions stated in the specifications describes a system where the server transmits to the remote players, and not a system where the remote player initiates communication by transmitting a signal to the server. Indeed, the specifications expressly state that "[t]he **message playback** generating **devices** … **are the end points of the system** …." (emphasis supplied). *Id*. at Col. 17, lines 66-67, PAGE ID # 432.

Moreover, the descriptions of the preferred embodiments clearly reflect that the server sends the signals to the message playback devices and not vice versa:

> The computers … transmit the message playlists and other information pertaining to selected remote sites … or … to the server. … **The server … , in turn, generates control signals for the message playback devices** at the selected remote sites **to play the selected messages**. … (emphasis supplied).  *Id*. at Col. 5, lines 18-20 and 26-28, PAGE ID # 426
>
> **The server** … preferably **transmits control signals** comprising playlists **to** a subcarrier radiopaging company … for radiopaging **the remote message payback devices** via a communications link. … (emphasis supplied).  *Id*. at Col. 5, lines 41-44, PAGE ID # 426.
>
> **The server** [] then **organizes** the datebase … changes into **control signals which are sent** to the radiopaging companies … for broadcast **to the message payback devices** …. (emphasis supplied). *Id*. at Col. 8, lines 1-4, PAGE ID # 427
>
> **The message playback** generating **devices are the end points** of the system ….  **The message playback device is** … **programmed to select** command packets **from the server** …. (emphasis supplied). *Id*. at Col. 17, lines 66-67, and Col. 18, lines 6, 7-8, PAGE ID # 432.

Each of these selected passages from the specifications clearly describes only a system where the server sends signals to the message playback devices, and not vice versa.

Moreover, the definition of message playback devices in the claims language contained in the Reexamination Certificate discloses a system comprising of "a computer remotely located from … message playback devices and operable to generate and transmit control signals … [to]  "**message playback devices being adapted to receive said control signals**." (emphasis supplied).  Doc. 47-1, Col. 2, lines 11-13 and 16-17, PAGE ID # 440.

Finally, of additional interest to the Court in construing the claims here is the extrinsic evidence relating to another patent, Patent No. 6,741,683 ("the Shelton patent") The Shelton patent covers "**a local protractive message on hold device, which contacts and interacts with a server, in order to receive from the server**, the audio programming and to install and alter the audio programming on the message on hold device." (emphasis supplied).  Doc. 47-6 at PAGE ID # 502.  This patent was issued in 2004, some three and a half years after the patent in suit here was issued, and in stating the reasons for allowing such patent, the examiner states that prior patents "show music on-hold systems but **fail to teach or fairly suggest updating the audio programs by a local device initiating contact with a server** to determine if audio program changes are available for the local device." (emphasis supplied).  Doc. 47-7 at PAGE ID # 511.  This statement assists the Court in determining what a person ordinarily skilled in the art would understand the claims to present at the time of the invention reflected in the patent at suit here.

### B. Construction of the Disputed Terms

#### 1. *"message playback devices"*

| Info-Hold's proposed construction | AMTC's proposed construction |
|---|---|
| A device configured to select and access from its storage device one or more stored messages and to play those messages through an output | A device configured to select and access from its storage device one or more stored messages and to play those messages through an output, and adapted to receive control signals after initiation of a contact from another source." |

The Abstract of the Patent discloses "[a] remotely programmable message delivery system comprises a number of client computers which communicate with a server to send control signals to one or more remote message playback devices." Doc. 74-1, the '374 Patent, at PAGE ID # 396.

Moreover, the claims language contained in the Reexamination Certificate defines a system comprising of "a computer remotely located from … message playback devices and operable to generate and transmit control signals … [to] **message playback devices being adapted to receive said control signals**." (emphasis supplied). Doc. 47-1, Col. 2, lines 11-13 and 16-17, PAGE ID # 440. *See also* pp. 4-7, *supra*.

Info-Hold's proposed construction improperly omits acknowledgment that the server sends control signals and the message playback devices are adapted to receive the control signals from the server. The language "being adapted to receive control signals" comes directly from the claims language. Doc. 47-1, Col. 20, lines 32-34 and 37-39, PAGE ID # ; Doc. 47-1, Col. 2, lines 11-13 and 16-17, PAGE ID # 440.

8

Not to construe "message playback devices" as including the acknowledgment that the message playback devices are adapted to receive control signals would misstate the nature of the invention. *See Markman*, 517 U.S. at 389 ("[A claim] term can be defined only in a way that comports with the instrument as a whole.").

Nowhere in the specification is it mentioned, and the specification does not enable, an embodiment where the device could initiate a contact with the server/computer and request a control signal. The message playback devices simply receive control signals when they are sent to the message playback devices by the server/computer.

AMTC's proposed construction of "message playback devises" is accurate, and the Court adopts it.

### 2. *"operable to generate and transmit control signals"*

| Info-Hold's proposed construction | AMTC's proposed construction |
|---|---|
| Capable to generate and transmit control signals | Capable to initiate a contact with the message playback device, and generate and send control signals to it. |

The claims, read in view of the specifications, establish that the "generate and transmit" step necessarily includes initiating a contact with the message playback device through generating and sending control signals. The construction of this term must necessarily acknowledge that the initiating of contact comes from the server/computer, not the message playback device. AMTC's proposed construction acknowledges this truth; Info-Hold's does not.

Accordingly, the Court adopts AMTC's proposed construction of this term.

3. *"transmit"*

| Info-Hold's proposed construction | AMTC's proposed construction |
|---|---|
| To communicate an electronic signal to another device | To initiate a contact with and send an electronic signal to another device |

Based on the evidence and reasoning reflected above, "transmit" must be construed to mean "initiate a contact with and send an electronic signal to another device."

Accordingly, the Court adopts AMTC's proposed construction of "transmit."

### V.  CONCLUSION

"The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).  Therefore, the parties shall construe the contested terminology of the patent in suit as set forth in this Order.

**IT IS SO ORDERED.**

Date:  April 25, 2013            *s/ Timothy S. Black*
           Timothy S. Black
           United States District Judge